UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RATNA BAGWE, | ) |
| | ) No. 11 CV 2450 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| SEDGWICK CLAIMS | ) |
| MANAGEMENT SERVICES, INC., | ) |
| TAMMY LECLAIRE, and ANGELA | ) |
| PAPAIOANNOU, | ) |
| | ) September 27, 2013 |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

In April 2011 Ratna Bagwe brought this employment discrimination suit alleging that Sedgwick Claims Management Services, Inc. ("Sedgwick"), Tammy LeClaire, and Angelou Papaionnou (collectively "Defendants") discriminated against her and harassed her based on her race and national origin and then retaliated against her for complaining about the alleged discrimination. The parties are currently engaged in fact discovery and Bagwe seeks to depose a former in-house attorney for Sedgwick, Rhynette Hurd, as part of her discovery efforts. Before the court is Defendants' motion for a protective order barring the deposition of Hurd. For the following reasons, the motion is granted:

**Background and Procedural History**

Bagwe, who was born in India and describes her race as "non-white," worked as an operations manager in Sedgwick's Chicago office before she was terminated in August 2009. (R.1, Compl. ¶¶ 1-2, 9.) Bagwe alleges that because of her race and

national origin, she received less work and was undercompensated compared to her white counterparts. (Id. ¶ 4.) Specifically, Bagwe contends that Sedgwick took race and national origin into consideration in making decisions about promotions and compensation and more frequently advanced white employees and other individuals outside of her protected class, regardless of their qualifications or expertise. (Id.) Bagwe also claims that she was unlawfully terminated in retaliation for challenging Sedgwick's allegedly discriminatory employment practices. (Id. ¶ 5.)

In July 2013 Bagwe notified Defendants of her intention to subpoena Hurd for her deposition pursuant to Federal Rule of Civil Procedure 45(b). (R. 91, Defs.' Mot., Exs. A, C.) During her tenure as an in-house attorney, Hurd worked out of Sedgwick's Memphis office, where she was responsible for overseeing errors and omissions claims, litigation, and employment matters. (Id. Ex. B, Hurd Decl. ¶ 2.) After Sedgwick terminated Hurd in September 2009, she filed a complaint against Sedgwick in the United States District for the Western District of Tennessee alleging discrimination and retaliation. (Id. Ex. A, Subpoena Rider at 7.) Ultimately, Hurd entered into a settlement agreement resolving all of her disputes with Sedgwick. (Id. Ex. B ¶ 9.) The terms of the settlement are subject to a confidentiality agreement. (Id.) After leaving Sedgwick, Hurd was appointed to serve as a state court judge in Memphis and currently is a principal owner of a mediation firm. (Id. ¶¶ 3-4.)

In addition to seeking Hurd's deposition, Bagwe's subpoena requests the production of material relevant to both Hurd's discrimination claim and Sedgwick's

discrimination and retaliation policies. (Id. Ex. A ¶¶ 4-5.) Specifically, it requests non-privileged materials regarding: Hurd's discrimination or retaliation claims, any allegations of discrimination or retaliation against several identified Sedgwick employees, Bagwe's discrimination or retaliation claims, and materials provided to Sedgwick employees regarding its anti-discrimination and anti-retaliation policies.

On July 3, 2013, Defendants requested that Plaintiff suspend plans to subpoena Hurd's deposition. (Id. Defs.' Mot. at 2 n.1.) Five days later, counsel for all parties participated in a Rule 37 conference to try to resolve their dispute concerning Hurd's deposition, but were unable to reach an agreement. (Id.) Defendants then filed the current motion seeking a protective order to bar Hurd's deposition.

**Analysis**

Defendants argue that Bagwe should be barred from deposing Hurd because she does not possess any non-privileged information that is relevant to this litigation and because the burdens of the proposed deposition outweigh its likely benefit. In particular they argue that Hurd's deposition will inevitably result in the disclosure of Sedgwick's privileged communications and matters that are subject to a confidentiality agreement. Under Federal Rule of Civil Procedure 26(b), parties may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense," as long as the discovery is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Rule 26 provides courts with the

power to enter a protective order, for good cause shown, to shield subjects of discovery from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Although Rule 45 allows any party to subpoena a non-party to produce documents or attend a deposition, that subpoena power remains subject to the general relevancy requirements of Rule 26(b). Fed. R. Civ. P. 26(b)(1); Wright, Miller & Cooper, *Federal Practice & Procedure* § 2459, at 441-44 (3d ed. 2008) (noting that the relevancy requirement of Rule 26(b)(1) extends to the scope of production under a subpoena). As such, the current motion requires the court to determine whether Bagwe's proposed subpoena to compel Hurd's deposition is likely to produce relevant, non-privileged information without imposing an undue burden on Hurd and Defendants. *See* Fed. R. Civ. P. 26(c)(1).

The court agrees with Defendants that to the extent Bagwe seeks to depose Hurd regarding Hurd's own discrimination and retaliation claims against Sedgwick, the deposition is not reasonably calculated to lead to the discovery of admissible evidence. Bagwe apparently seeks Hurd's deposition testimony primarily to find out if the circumstances underlying her discrimination complaints are similar enough to support Bagwe's claims of discrimination under either the indirect or direct methods of proof, even though they involved different offices and different supervisors. (R. 98, Pl.'s Resp. at 6.) In support of that approach, Bagwe argues that under the Supreme Court's decision in *Sprint/United Mgm't Co. v. Mendelsohn*, 552 U.S. 379, 385-88 (2008), Hurd's testimony regarding her own discrimination case "squarely supports [Bagwe's] theory that Defendant Sedgwick's

4

human resources department operates to justify managements' retaliatory actions, not meaningfully investigate employees' internal complaints of discrimination in any meaningful way." (R. 98, Pl.'s Resp. at 8-9.) But Bagwe reads *Sprint* too broadly. In *Sprint*, the Supreme Court reviewed the appellate court's conclusion that the district court had improperly applied a bright-line rule excluding testimony by nonparties who claimed discrimination at the hands of supervisors who played no role in the underlying case. 552 U.S. at 380-81. The Supreme Court remanded the case to allow the district court to assess the relevance of the evidence, balancing its probative value against its prejudicial impact. *Id.* at 387. It held that such evidence is neither *per se* admissible nor *per se* inadmissible, but may be relevant where the plaintiffs' circumstances and theory of the case are closely related to the nonparties' circumstances and theories. *Id.* at 388.

Based on the parties' submissions here, there is no reason to believe that the facts and circumstances of Hurd's lawsuit have even a tangential bearing on the current claims. Bagwe contends that Hurd's testimony is relevant because like Bagwe, Hurd is a non-white employee who alleged that Sedgwick retaliated against her for raising internal complaints opposing race discrimination. (R. 98, Pl.'s Resp. at 8-9.) She also points to the fact that the events underlying both lawsuits played out during a similar timeframe. (Id. at 9.) But as Defendants highlight, Hurd and Bagwe worked in different offices, in different cities, reported to different supervisors, and performed entirely different job functions. Bagwe worked as an operations manager in Sedgwick's Chicago office and claims that she was

5

discriminated against by her supervisors who were responsible for that office. Hurd worked as an attorney in Sedgwick's Memphis office, and her claims stemmed from incidents involving an entirely different set of supervisors. Bagwe has not explained how Hurd's knowledge of the circumstances surrounding her own claims would have any bearing on Bagwe's claims involving people with whom Hurd never worked. *See Saket v. American Airlines, Inc.*, No. 02 CV 3453, 2003 WL 685385, at *3 (N.D. Ill. Feb. 28, 2003) (concluding that discovery designed to uncover discrimination complaints outside plaintiff's work group and supervisors was overly broad). Although Bagwe correctly points out that evidence of "ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group" can be relevant as circumstantial evidence in a discrimination case, *see Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009), comparing situations is only productive where the plaintiff's and the other employee's circumstances are sufficiently similar, *see Sprint*, 552 U.S. at 388; *see also Balderston v. Fairbanks Morse Engine Div. of Coltec Inds.*, 328 F.3d 309, 320 (7th Cir. 2003) (finding that the district court did not abuse discretion in limiting discovery in discrimination claim "to the relevant corporate department, similarly situated employees, time period, and decision makers"). Simply put, because Defendants have shown that there is no reason to believe the circumstances surrounding Hurd's claims are similar to Bagwe's, Hurd's deposition is unlikely to lead to relevant evidence. *See* Fed. R. Civ. P. 26(b)(1).

Bagwe asserts in opposition that this case and Hurd's previous case—which settled without any findings of fact—are linked by the fact that Sedgwick maintains a centralized human resources department, and that accordingly, the same two human resources employees were aware of or involved in both of their terminations. According to Bagwe, Rachel Jackson was a human resources director who oversaw all discrimination investigations in 2008 and 2009. (R. 98, Pl.'s Resp. at 3-4.) Jackson met with Hurd to discuss her claims and was the Sedgwick representative who informed Bagwe that she was being terminated. (Id. at 4.) Terri Browne is Sedgwick's top-level human resources official who is charged with approving all terminations. (Id.) According to Bagwe, Browne knew about the circumstances surrounding both Bagwe's and Hurd's discrimination claims before approving their terminations.

The fact that two of Sedgwick's human resources employees were aware of both Hurd's and Bagwe's discrimination claims does not necessarily mean that Hurd's circumstances were closely related to Plaintiff's. Bagwe has deposed Jackson already, but points to nothing in that testimony that links Hurd's and Bagwe's claims at anything but the most generic level. (Id. at 4-5, 9.) If the fact that the same top-level human resources employees are aware of all of the company's discrimination claims makes Hurd's testimony relevant, then under Bagwe's theory the deposition testimony of any former or current employee who complained of discrimination in any office, involving any managers, and under

7

whatever the circumstances, is relevant to this case. But that stretches Rule 26(b)'s relevancy requirement too far.

Defendants also argue that Hurd should be shielded from testifying about her own claims because under the terms of her settlement agreement, Hurd is contractually precluded from disclosing the terms of her settlement or the circumstances underlying her lawsuit. They highlight the important goals of protecting an individual's privacy interests from abuse and of promoting settlement by keeping settlement terms confidential. *See Grove Fresh Distribs. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1441 (N.D. Ill. 1995). Although on the one hand, the impact of requiring Hurd to testify here is limited because the case is governed by a protective order, *see Channelmark Corp. v. Destination Prods. Int'l, Inc.*, No. 99 CV 214, 2000 WL 968818, at *5 (N.D. Ill. July 7, 2000), on the other hand "courts are generally reluctant to order disclosure of negotiations or documents related to a settlement agreement," *see Davenport v. Indiana Masonic Home Found., Inc.*, No. IP 00-1047-CH/G, 2003 WL 1888986, at *2 (S.D. Ind. Mar. 27, 2003). This court shares that reluctance here, where Bagwe has failed to demonstrate her need for the information Hurd could provide about her own claims, let alone explain how that need outweighs the policy interest in keeping settlement terms confidential.

To the extent Bagwe seeks information regarding other discrimination or retaliation claims to which Hurd gained access through her role as Sedgwick's corporate counsel, that information is subject to the attorney-client privilege. (R. 91, Defs.' Mot., Ex. A, Subpoena Rider at 5-6.) Rule 26 limits discovery to the

8

production of nonprivileged materials. Fed. R. Civ. P. 26(b)(1). It is well-established "that the attorney-client privilege attaches to corporations as well as to individuals," *Commodities Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985), and protects communications between corporate counsel and corporate employees that inform the attorney's advice to the corporate client with respect to actual or potential legal difficulties, *Upjohn Co. v. United State*, 449 U.S. 383, 391 (1981). In this case, any knowledge Hurd has regarding Bagwe's discrimination or retaliation claims, or other employees' discrimination or retaliation claims, was likely gleaned from her role as Sedgwick's corporate counsel. In fact, Hurd submitted a declaration clarifying that the only information she has about Bagwe's claims she learned in her capacity as Sedgwick's corporate counsel. (R. 91, Defs.' Mot. Ex. B, Hurd Decl. ¶¶ 6-7.) As a result, Hurd's disclosure of any communications or information regarding Bagwe's or other employees' claims is likely to violate the attorney-client privilege.

The difficulty in Hurd testifying about her work for Sedgwick without violating the attorney-client privilege lends weight to Defendants' argument that the proposed subpoena would subject them and Hurd to an undue burden. When a party or subpoena respondent seeks protection from "annoyance, embarrassment, oppression, or undue burden or expense," the court must balance the burden of compliance against the benefits of the requested production. Fed. R. Civ. P. 26 (c)(1); *see also Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). In that balancing, nonparties are entitled to greater protection, meaning the

mere possibility of discovering relevant evidence may not be enough to justify the burden of compelled testimony. *Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005). In the circumstances of this case, the difficulty Hurd will face in providing relevant testimony without violating her obligation to maintain the attorney-client privilege, must be weighed against how little non-privileged information of probative value Hurd is likely to provide. Bagwe proposes to reduce this burden by asking only questions regarding who was involved in privileged communications and when the communications occurred. (R. 98, Pl.'s Resp. at 12.) But such information is unlikely to be of much probative value, if the substance of the communications is to remain privileged. Accordingly, this court concludes that the burden imposed by compelling Hurd's testimony outweighs any likely benefit to be gained by Bagwe.

Finally, to the extent the proposed subpoena rider seeks non-testimonial evidence in Hurd's possession regarding Sedgwick policies or other discrimination suits, Hurd asserts in her declaration that she does not have any responsive materials. (R. 91, Defs.' Mot. Ex. B, Hurd Decl. ¶ 8.) Hurd states that she was contractually obligated to return or destroy any documents related to Sedgwick upon her departure and that she complied with that obligation. (Id.) Because Bagwe does not contest Hurd's assertion that she does not possess any documents responsive to the proposed subpoena's request, Defendants are entitled to a protective order with respect to those materials as well.

## Conclusion

For the foregoing reasons, Defendants' Motion for a Protective Order to Bar the Deposition of Rhynette Hurd is granted.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**