UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RATNA BAGWE,<br><br>              Plaintiff,<br><br>    v.<br><br>SEDGWICK CLAIMS MANAGEMENT<br>SERVICES, INC., TAMMY<br>LECLAIRE, and ANGELA<br>PAPAIOANNOU,<br><br>              Defendants. | No. 11 CV 2450<br><br>Magistrate Judge Young B. Kim<br><br><br><br><br>January 27, 2015 |

**MEMORANDUM OPINION and ORDER**

Before the court is the Bill of Costs submitted by Defendants Sedgwick Claims Management Services, Inc., Tammy LeClaire, and Angela Papaioannou (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920, for $82,309.38. For the following reasons, Defendants' Bill of Costs is granted in the amount of $22,025.21:

**Background**

On September 5, 2014, the court granted Defendants' motion for summary judgment. (R. 172.) The court then entered final judgment on September 8, 2014, in favor of Defendants and against Plaintiff Ratna Bagwe. (R. 174.) The following month, on October 8, 2014, Defendants filed their Bill of Costs seeking $137,654.02 from Bagwe. (R. 181.) The largest component of Defendants' Bill of Costs is $113,058.69 related to e-discovery. Bagwe opposes Defendants' request and objects to the amount on the following grounds: (1) Defendants should not be awarded any

amount in costs because she is unable to pay and because awarding costs in a Title VII action is contrary to public policy; (2) Defendants' transcript related costs exceed the maximum rate allowed by Local Rule 54.1 or are otherwise not taxable; (3) Defendants are not entitled to compensation for certain witness fees; (4) Defendants are not entitled to the bulk of their e-discovery fees; and (5) Defendants cannot recover copying costs associated with a second set of copies. (R. 191, Pl.'s Obj. at 2-16.) In the event costs are awarded, Bagwe suggests that the court allow only $11,440.41 in costs. (Id., Exs. 1-6.) There is no dispute that Defendants are entitled to seek costs in this case.

In response to Bagwe's objections, Defendants amended their Bill of Costs and reduced their original request from $137,654.02 to $82,309.38 in taxable costs. (R. 197, Defs.' Resp. at 1-2.) Defendants' original and amended requests for costs, along with Bagwe's position on costs, are summarized as follows:

| Costs | Defendants' Original Bill of Costs | Defendants' Amended Bill of Costs | Plaintiff's Position on Bill of Costs |
|---|---|---|---|
| Court Reporting | $21,795.30 | $21,795.30 | $10,730.65 |
| Witness | $1,573.52 | $1,532.64 | $560.10 |
| E-Discovery | $113,058.69 | $57,858.94 | $67 |
| Photocopying | $1,122.50 | $1,122.50 | $82.66 |
| Other | $104.01 | $0 | $0 |
| Total Amount | $137,654.02 | $82,309.38 | $11,440.41 |

## Analysis

Pursuant to Rule 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The determination of whether costs should be awarded remains within the discretion of the district court. *O.K. Sand & Gravel, Inc. v. Martin Marietta Techs., Inc.*, 36 F.3d 565, 571 (7th Cir. 1994). However, the court recognizes that there is a strong presumption in favor of awarding costs to the prevailing party. *Park v. City of Chicago*, 297 F.3d 606, 617 (7th Cir. 2002).

The term "costs" as it is used in Rule 54(d) is defined as:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Although only six categories are enumerated by statute, many circuits, including the Seventh Circuit, recognize that courts have latitude and authority to interpret the meaning of these categories. *See, e.g., SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 944 (7th Cir. 1988) (noting that "the Supreme Court did not prevent courts from interpreting the meaning of the phrases in § 1920") (inner quotations and citation omitted), *cert. denied,* 492 U.S. 918 (1989); *see also Alflex Corp. v. Underwriter's Labs., Inc.*, 914 F.2d 175, 177-78 (9th Cir. 1990) (discussing fees "encompassed" within Section 1920(2)).

A.     **Burden of proof**

In order to recoup their costs, the initial burden is on Defendants to demonstrate that the costs were necessary and reasonable. *Trustees of the Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). Basic itemization of the costs, the amounts, and an attestation that the costs were necessarily incurred in the litigation are often adequate to meet this burden, as long as there are sufficient details to allow the court to assess the reasonableness of any costs requested. *See id.* at 905-06; *Se-Kure Controls, Inc. v. Vanguard Prods. Group, Inc.*, 873 F. Supp. 2d 939, 943-44 (N.D. Ill. 2012) (citing *Telular Corp. v. Mentor Graphics Corp.*, No. 01 CV 431, 2006 WL 1722375, at *1 (N.D. Ill. June 16, 2011) ("The prevailing party bears the burden of demonstrating the amount of its recoverable costs because the prevailing party knows, for example, how much it paid for copying and for what purpose the copies were used.")); *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 969 (N.D. Ill. 2010) ("the prevailing party must prove with evidence and not merely *ipse dixit* statements—that the costs were actually incurred, were reasonable in amount, and were necessary.") If Defendants meet this initial burden, it is incumbent upon Bagwe to prove that the costs are inappropriate. *See Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). In this case, Defendants submitted written testimony authenticating exhibits that itemize the amounts and prices of various litigation costs and an affidavit from their lead counsel, Monica H. Khetarpal, attesting to the reasonableness of the costs that they now seek to recoup, meeting the basic

4

itemization, amount, and attestation requirement outlined in *Trustees. of the Chicago Plastering Institute Pension Trust*, 570 F.3d at 906.

## B. Bagwe's Arguments Against an Award of Costs

Bagwe argues that the court should deny Defendants' request for costs because she is indigent and because awarding costs against her would "create a chilling effect on litigation, and undermine Title VII's congressional purpose[.]" (R. 191 at 6-7.) The court addresses each of these arguments in turn.

Bagwe asserts that "taxing over $137,000 in costs would make [her] indigent." (Id. at 6.) Although it is true that an individual's inability to pay is an appropriate consideration in a court's decision to award costs, it is a limited consideration that places the burden of proof on the party claiming indigence. *See Rivera v. City of Chicago*, 469 F.3d 631, 635-36 (7th Cir. 2006) (vacating and remanding a district court's decision not to award costs against a party who claimed to be indigent). Courts must evaluate claims of indigence by considering whether the losing party is incapable of paying and "the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case." *Id.* at 635. Furthermore, the party claiming indigence is required to provide documentation "that include[s] evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses." *Id.*

Bagwe cites to *Rivera* in support of her opposition but she ignores its teaching in that her submissions are devoid of any actual evidence or attestation about her

5

inability to pay costs. In *Fabiyi v. McDonald's Corp.*, No. 11 CV 8085, 2014 WL 2819007, at *3-*4 (N.D. Ill. Jun. 23, 2014), this court rejected an "inability to pay" argument with far more documentation than Bagwe provides in this case. So, while the court will consider the impact that a large bill of costs might have on an individual litigant in a very general sense, it lacks the necessary foundation to make any specific determinations about Bagwe's financial circumstances and her ability to pay any of the costs.

Bagwe's public policy argument does not fare any better. Bagwe argues that awarding costs to Defendants is contrary to the objective of Title VII. (R. 191 at 7.) In support, Bagwe cites to dicta from *Griggs v. Duke Power Co.*, 401 U.S. 424, 429-30 (1971), for the proposition that the purpose of Title VII is "to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees." But these aims have nothing to do with whether prevailing employers in Title VII cases should be able to recoup their costs. In contrast, the Seventh Circuit held in *Delta Air Lines, Inc. v. Colbert*, 692 F.2d 489, 491 (7th Cir. 1982), that employers are permitted to recover costs from employees in Title VII cases. Therefore, there is no basis to reject Defendants' request for costs in this case.

**C.    Court Reporting Costs**

Defendants seek $21,795.30 for "costs of purchasing transcripts and exhibits and associated court reporter time" pursuant to 28 U.S.C. § 1920(2). (R. 182, Defs.' Bill of Costs at 5.) Section 1920(2) provides that a party may tax costs "for printed

6

or electronically recorded transcripts necessarily obtained for use in the case." Defendants calculate their Section 1920(2) costs by aggregating "all allowable costs for each of the 18 depositions they took." (R. 197, Defs.' Resp. at 3.) Bagwe concedes that Defendants are entitled to recover certain costs pursuant to Section 1920(2), but disputes the total amount sought on three bases: (1) the requested transcript rate exceeds allowable rates; (2) some of the costs are not recoverable; and (3) the costs associated with 5 of the 18 depositions are not recoverable. (R. 191, Pl.'s Obj. at 8-9.)

As to Bagwe's first point, the allowable rate for transcript costs is governed by Local Rule 54.1, which provides that taxable costs "shall not exceed the regular copy rates as established by the Judicial Conference of the United States in effect at the time the transcript or deposition was filed." N.D. Ill. L.R. 54.1. During the relevant times in this case, the Judicial Conference maintained a $3.65 per page rate for original transcripts, and $110 or $220 for half and full day court reporter attendance fees, respectively. N.D. Ill. Gen. Order 12-0003 (Jan. 26, 2012) (available at: http://www.ilnd.uscourts.gov/home/GeneralOrders.aspx); 28 U.S.C. § 753. Costs for an expedited transcript are allowable at a rate of $4.85 per page for seven-day transcripts or $6.05 per page for daily transcripts, (N.D. Ill. Gen. Order 12-0003), if they are "reasonably necessary," *Fletcher v. Chicago Rail Link, LLC*, No. 06 842, 2007 WL 4557816, at *3 (N.D. Ill. Dec. 20, 2007).

Here, Defendants seek costs for expedited transcript copies at rates ranging up to $8.55 per page, far exceeding the maximum allowance for daily expedited

7

transcripts. Also, Defendants fail to demonstrate that they needed expedited transcripts in defending this action. Defendants explain that expedited transcripts were warranted because 11 depositions took place between August and October 2013. (R. 197, Defs.' Resp. at 6.) More specifically, Defendants point to the closeness of certain depositions as the basis for needing expedited transcripts. But a generalized reference to having to take 11 depositions during a three-month period is insufficient to show specific necessity for expedited transcripts, and it is unclear why deposition transcripts were even necessary to prepare witnesses for depositions. Defendants were presumably represented at all of these depositions and were able to listen to and note the testimony of the deponents. The court is not persuaded that expedited transcripts were reasonably necessary. Accordingly, the proper rate for calculating transcript costs in this case is $3.65 per page.

As to Bagwe's second point, the statute only provides for the recovery of costs for "printed or electronically recorded transcripts necessarily obtained for use in the case." Bagwe argues that the transcript costs submitted by Defendants include impermissible fees related to word indices and copies of exhibits already within Defendants' possession, and seeks to subtract $7,761.55 from the total cost sought. (R. 191, Pl.'s Obj. at 10, Ex. A.) So while the actual transcript costs may be taxed, "[a]dditional costs for disks, minuscripts, word indexes, extra copies, or delivery/shipping charges are not generally recoverable." *Telular Corp.*, 2006 WL 1722375 at *3. Moreover, although exhibits are often an integral part of a deposition, it is not true that a copy of an exhibit already in the possession of a

party is "necessarily obtained" for the purposes of transcript costs. *See, e.g., Thayer v. Chiczewski*, No. 07 CV 1290, 2010 WL 3087447, at *9 (N.D. Ill. Aug. 4, 2010) (declining to award costs for deposition exhibits already within the possession of a party) (citing *Chemetail GmbH v. ZR Energy, Inc.*, No. 99 CV 4334, 2001 WL 1104604 (N.D. Ill. Sept. 14, 2001)).

Defendants counter that exhibit costs should be awarded because they "were important to understanding the case," adopting the language of *1200 Ashland LLC v. Lawyers Title Insurance Co.*, No. 07 CV 6241, Dkt. #128 (N.D. Ill. Jan. 19, 2012). But in *1200 Ashland*, the plaintiff against whom the costs were to be taxed did not object to the exhibit costs, nor to any other part of the bill of costs. *Id.* at 1 ("Plaintiff 1200 Ashland, LLC has not responded and the time for doing so has long expired."). Although Defendants claim that Bagwe's position on exhibit fees is "flatly wrong," they do not cite to any convincing authority in support of that position. Nor do Defendants advance any detailed quarrel with Bagwe's calculation of recoverable transcript costs. Lacking an alternative, the court will adopt Bagwe's calculation of allowable transcript costs that exclude charges for exhibits and also exclude charges for indices.

As to Bagwe's third point, the issue is whether Defendants are entitled to recover costs related to all 18 depositions or just some of them. Defendants contend that all 18 depositions were "necessarily obtained," regardless of whether they were actually used in summary judgment briefing. Without any legal support, Bagwe argues that "any transcripts not cited in any summary judgment material were not

necessarily obtained." (R. 191, Pl.'s Obj. at 11.) However, "'[t]he proper inquiry is whether the deposition was 'reasonably necessary' to the case at the time it was taken, not whether it was used in a motion or in court.'" *Cengr v. Fusibond Piping Sys.*, 135 F.3d 445, 455 (7th Cir. 1998) (citing *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995)). Bagwe admits that 13 of the 18 depositions were reasonably necessary because they were cited in the parties' summary judgment briefing, but challenges the costs related to the remaining 5 depositions: Pradip Bagwe (Bagwe's husband), Amar Bagwe (Bagwe's son), Dr. Rachel Oosterbaan (Bagwe's treating physician), Dr. Chandragupta Vedak (Bagwe's treating psychiatrist), and Kristine Jagnow (a former supervisor of Bagwe). The Seventh Circuit's approach to assessing depositions under Section 1920(2) in *Cengr* complements the purpose of discovery depositions by allowing costs to be taxed for depositions of persons likely to have information relevant to the claims and defenses of the parties. The parties are not required to be clairvoyant about whether a witness's testimony will appear in subsequent briefing. Defendants argue that "each deponent offered testimony on topics relevant to Plaintiff's damages, including her alleged mental distress and ability to find and hold another job after leaving Sedgwick," and that "[a]lthough these topics were not addressed at the summary judgment phase, they would have been critically important at trial." (R. 197, Defs. Resp. at 4.) Defendants have met their burden to show that the 5 contested depositions were reasonably necessary at the time they were taken and,

10

therefore, they are entitled to recover costs for all 18 depositions. Accordingly, Defendants are awarded $14,033.75 in transcript costs under Section 1920(2).

**D.    Witness costs**

Defendants claim they are entitled to $1,532.64 in witness attendance fees for four witnesses[1] pursuant to 28 U.S.C. § 1920(3), which provides for "fees and disbursements for printing and witnesses." (See R. 182, Defs.' Bill of Costs at 7.) First, Bagwe does not object to $82.66 in witness fees for Erin Spychalski and Kristine Jagnow. (R. 191, Pl.'s Obj. at 13; R. 197, Defs.' Resp. at 8.) Section 1920(3) does allow the taxation of costs, but the recoverable witness fee is limited to the rate allowed by statute. *American Safety Cas. Ins. Co. v. City of Waukegan*, No. 07 CV 1990, 2011 WL 6437535, at *2 (N.D. Ill. Dec. 20, 2011); 28 U.S.C. § 1821.

Defendants claim that they should be reimbursed for the appearance fees demanded by Dr. Oosterbaan and Dr. Vedak because "[n]either . . . would have appeared if Defendants had not paid their requested fees." (R. 197, Defs. Resp. at 8-9.) Defendants do not point to any authority that would entitle them to recover the $1,100 and $350 paid to these physicians, respectively. In *American Safety*, the district court rejected nearly identical arguments as baseless. *Id.* at *2. According to 28 U.S.C. § 1821(b), "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance." Defendants give no reason why the testimony of either Dr. Oosterbaan or Dr. Vedak is not subject to the witness fee limit of $40 provided

---

[1] Defendants originally sought compensation for five witnesses (R. 181, Defs.' Bill of Costs at 7), but withdrew their request for Michael Bavaro because his deposition did not go forward, (R. 197, Defs.' Resp. at 8, n.7).

11

by Section 1821(b). Although Illinois Supreme Court Rule 204(c) mandates that when nonparty physicians are deposed in state court matters that they are paid "a reasonable fee" for testifying, Defendants have not pointed to any federal counterpart to this rule. Therefore, Defendants are only entitled to recover a total of $162.66 in witness fees for Drs. Oosterbaan and Vedak, Spychalski, and Jagnow.

**E.     E-Discovery Costs**

The most expensive category of costs in this case is related to e-discovery. This court has previously dealt with e-discovery cost issue and recognizes the disconnect between the aging cost rules and the global migration to storing information electronically. *See, e.g., Massuda v. Panda Express, Inc.*, No. 12 CV 9683, 2014 WL 148723 (N.D. Ill. Jan. 15, 2014). As Defendants concede, the rules do not expressly provide for the recovery of e-discovery costs, meaning that the only route to recovery of these costs must pass through the strictures of 28 U.S.C. § 1920(4), which allows for the recovery of "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."

In order to resolve this e-discovery cost issue, this court follows the approach taken by the courts in *Rawal v. United Airlines, Inc.*, No. 07 CV 5561, 2012 WL 581146, at *2 (N.D. Ill. Feb. 22, 2012), *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 170 (3d Cir. 2012), and *Johnson v. Allstate Insurance Co.*, No. 07 CV 0781, 2012 WL 4936598, at *6 (S.D. Ill. Oct. 16, 2012), as it did earlier in *Massuda*. In *Massuda*, this court held that e-discovery costs:

> associated with the conversion of ESI into a readable format, such as scanning or otherwise converting a paper version to an electronic version or converting native files to TIFF files . . . are compensable under § 1920(4). But costs related to the 'gathering, preserving, processing, searching, culling, and extracting of ESI simply do not amount to "making copies" and are thus not taxable.

2014 WL 148723, at *6. In other words, e-discovery costs are recoverable only when they are clear analogues of copying costs.

Defendants take several different swings to recover their costs related to e-discovery. Defendants first swing for the fence and seek $57,858.94 for the entirety of their e-discovery costs. (R. 197, Defs.' Resp. at 9.) They miss. Defendants are vague about exactly how they arrived at the sum of $57,858.94, but this sum apparently includes costs related to obtaining and culling enormous amounts of ESI from "a hefty 422.05 GB" of data down to just over 25 GB of data. (Id. at 13-14.) Defendants rely on *In re Aspartame Antitrust Litigation*, 817 F. Supp. 2d 608, 614-15 (E.D. Pa. 2011), in seeking to recover this e-discovery cost. According to Defendants, they employed "e-discovery techniques" effectively and were therefore able to obtain an "even better" data set than the *Aspartame* defendants. (R. 197, Defs.' Resp. at 12-13.) But Defendants acknowledge that their bid for $57,858.94 in e-discovery costs is contrary to this court's ruling in *Massuda*. Defendants argue that *Race Tires, Rawal*, and *Johnson* were all wrongly decided and that a different approach is warranted here on account of "the egregious facts" in this case, by which they mean Bagwe's extensive discovery requests. (R. 197, Defs.' Resp. at 10.)

Defendants' assertion that *Race Tires*, *Rawal,* and *Johnson* were wrongly decided may be brushed aside because they do not offer any reasons why these cases

13

were wrongly decided or why this court should not follow them. They merely urge the court to award all of their e-discovery costs because "[t]he equities demand [Bagwe] be held fully responsible." (Id. at 11.) But Rule 54 is not a discovery sanction tool.

Defendants next swing for a double and argue that if the entire amount cannot be recovered, they are entitled to at least $7,953.90, which represents the cost of "gather[ing] emails with metadata intact . . . by creating forensic images and then extracting the .pst files into .msg files," which they say amounts to converting the files into a "readable format." (R. 197, Defs.' Resp. at 13.) They miss again. Defendants do not provide any guidance about why the act of gathering e-mails that include metadata is different from other types of non-taxable "gathering." As this court has already explained, efforts for "gathering, preserving, processing, searching, culling, and extracting of ESI" are not recoverable. *Massuda*, 2014 WL 148723, at *6.

Defendants finally swing down for a hit and argue that they are entitled to $7,266.40 in costs, which excludes the cost associated with gathering the files with metadata and represents "only converting the data obtained into readable form." (R. 197, Defs.' Resp. at 13.) Defendants connect with this swing. Converting digital files into a readable format is akin to providing photocopies of responsive discovery documents to the requesting party.

Bagwe contends that Defendants should—at an absolute maximum—recoup only $67 for their e-discovery efforts: the cost of a single USB thumb drive. (R. 191,

14

Pl.'s Obj. at 13-14; R. 198 Pl.'s Reply at 5-6.) In support of her position, Bagwe points to *Taniguchi*, 132 S. Ct. 1997, 2005-06 (2012), to argue that no e-discovery costs are recoverable because the Supreme Court "construed 28 U.S.C. § 1920 narrowly and strictly limited costs to what is allowed in the plain language of the statute." (R. 191, Pl.'s Obj. at 13.) But, to award only the cost of the USB drive would be akin to awarding to the prevailing party only the cost of paper if photocopies of paper documents were provided.

The court does not quarrel with Bagwe's reliance on *Taniguchi* as it also relied on *Taniguchi* to reach its decision in *Massuda*. 2014 WL 148723, at *6 (explaining that "[t]he Third Circuit's narrow interpretation of § 1920(4) [in *Race Tires*] finds support in the Supreme Court's decision two months later in *Taniguchi*"). In *Taniguchi*, the Supreme Court took a strict textualist approach to the question of whether Section 1920's provision for "compensation of interpreters" could include costs for document translation, ultimately determining that it did not do so. 132 S.Ct. at 2002. The most obvious difference between *Taniguchi* and this case is that there are no translation costs here, and so the rule of *Taniguchi* strictly applied does not prevent the award of costs for copying. But more importantly, *Taniguchi* supports this court's decision in *Massuda* to read Section 1920 narrowly and not to allow compensation for any activity that could not be characterized as "copying." Costs for "exemplification and the costs of making copies" through photocopying and the conversion of ESI into a readable format are two sides of the same coin: namely, the pre-and-post digital era approach to "copying," or creating

15

readable documents that may be transmitted to the party requesting the information. *See Massuda*, 2014 WL 148723, at *6. The court notes that Section 1920(4) does not employ the phrase "making photocopies," which is commonly understood to mean making paper copies, but employs the phrase "making copies of any materials," which is a much broader phrase with more diverse meaning. Accordingly, Defendants are entitled to recover $7,266.40 in e-discovery costs.

## F. Photocopying Costs

Defendants seek $1,122.50 (11,225 copies at 10 cents per page) in copying costs pursuant to 28 U.S.C. § 1920(4), which allows costs for "making copies of any materials where the copies are necessarily obtained for use in the case." But Defendants are only entitled to recover copying costs for "materials actually prepared for use in presenting evidence to the court." *See Perry v. City of Chicago*, No. 08 CV 4730, 2011 WL 612342, at *2 (N.D. Ill. Feb. 15, 2011). Section 1920(4) permits the recovery of costs for "'copies attributable to discovery and copies of pleadings, motions, and memoranda submitted to the court,' [but] not 'copies made solely for the convenience of counsel.'" *Id.* at *2 (quoting *Roney v. Illinois Dept. of Transp.*, No. 99 CV 4941, 2007 WL 1100751, at *1 (N.D. Ill. Apr. 12, 2007)). The burden of demonstrating the necessity of the copies made rests with Defendants, who must provide the court with enough information to determine which costs are recoverable, and must keep in mind that "conclusory assertions that copying costs were necessary are not convincing." *Mi-Jack Prods. v. Int'l Union of Operating Engrs.*, 94 CV 6676, 1996 WL 139249, at *2 (N.D. Ill. Mar. 26, 1996).

16

Bagwe argues that Defendants should only be awarded $562.40, because Defendants are not entitled to the costs associated with duplicating a second set of copies of documents generated in this case. (R. 191, Pl.'s Obj. at 11-12.) Defendants protest that "failing to maintain copies of filings and documents sent to opposing counsel would be irresponsible[.]" (R. 197, Defs.' Resp. at 8.) But, sensible document management practice is irrelevant to Section 1920. *See Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) ("We have held that the cost of copies made by an attorney for his or her own records is not recoverable."). Therefore, Defendants are entitled to recover $562.40 in photocopying costs.

## Conclusion

For the foregoing reasons, Defendants' request for costs is granted as follows for a total sum of $22,025.21: (1) $14,033.75 in court reporter costs; (2) $162.66 in witness fees; (3) $7,266.40 in e-discovery costs; and (4) $562.40 in photocopying costs.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**